UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
COREY DAVIS,

              Plaintiff,

-against-                            **ORDER**
                                        12-CV-1906 (SJF)(SIL)

JOY BROWN, PODS Inc.,

              Defendants.
----------------------------------------------------------X

FEUERSTEIN, J.

On April 17, 2012, plaintiff Corey Davis ("Davis") commenced this action against defendants Joy Brown ("Brown") and PODS Enterprises, Inc. (s/h/a PODS Inc.,) ("PODS"), asserting claims, *inter alia*, seeking to recover damages from a lien sale by PODS of property stored by Brown in a self-service storage container pursuant to a rental agreement between PODS and Brown. Pending before the Court are: (1) PODS' motion for summary judgment; (2) Brown's motion for leave to file an amended cross complaint; (3) Brown's cross-motion for summary judgment on the proposed amended cross complaint; (4) Davis's motion for leave to file a second amended complaint; and (5) Davis's cross-motion for summary judgment on the proposed second amended complaint. For the reasons set forth below, PODS' motion for summary judgment is granted in part and denied in part, Brown's and Davis's motions to amend are denied, and Brown's and Davis's cross-motions for summary judgment are denied as moot.

I. Background

    A. Factual Background[1]

PODS operates a self-storage business that provides containers to its customers for self-storage purposes. (PODS' 56.1 Stmt. ¶ 1). Customers can place property into the container, secure the container with the customer's own lock, and request that PODS retrieve the container and transport it to a PODS facility for storage. (*Id.* ¶¶ 2-3).

Davis is currently incarcerated at the United States Penitentiary, Tuscan. (Kunkin Decl., Ex. B ("Davis Depo."), at 6). Davis and Brown were in an exclusive relationship from 1994 through the early 2000s, and have a son together. (*Id.* at 8, 89).

Following Davis's arrest on December 27, 2006, Brown contacted PODS to arrange for the delivery of a storage container unit to "Davis's mothers [sic] house [located at 143-12 184th Street, Springfield Gardens, New York 11432] where he was residing at the time" (the "Springfield Residence"). (Amended Complaint ("Am. Compl.") [Docket Entry No. 6] ¶¶ 5-6; Kunkin Decl., Ex. A ("Brown Depo."), at 28-29). Davis's personal property needed to be removed from the Springfield Residence so that Davis's mother could rent out the space to a new tenant. (Davis Depo., at 13-15; Kunkin Decl., Ex. G ("Chester Davis Depo."), at 12-13). Brown packed up some of Davis's belongings. (Brown Depo., at 38; Chester Davis Depo., at 37).

On January 9, 2007, PODS delivered POD number 859B48 (the "Container") to the Springfield Residence and placed the Container in front of the driveway in the street. (Brown

---

[1] The facts are taken from the undisputed assertions in PODS' Local Rule 56.1 Statement of Undisputed Material Facts ("PODS' 56.1 Stmt.") [Docket Entry No. 47-2], the declarations of Daniel Ogburn ("Ogburn Decl.") [Docket Entry No. 47-3] and Marc Kunkin ("Kunkin Decl.") [Docket Entry No. 47-9] in support of PODS' motion for summary judgment and the exhibits attached thereto, and my review of the record. Davis's motion to strike the Ogburn declaration [Docket Entry No. 73] is denied.

Depo., at 54-55; Brown Answer[2] [Docket Entry No. 35], ¶ 2; Am. Compl. ¶ 7). That same day, Brown signed a rental agreement (the "Rental Agreement") that named PODS as lessor and Brown as tenant of the Container.[3] (Ogburn Decl., Ex. A; Brown Depo., at 13-15). According to the terms of the Rental Agreement, Brown was permitted to use the Container solely to store her own personal property.[4] (Rental Agreement, ¶ 4). The Rental Agreement also required Brown to insure the property stored in the Container if the aggregate value exceeded five thousand dollars ($5,000.00).[5] (*Id.*). Brown has submitted no proof that she obtained any such insurance.[6]

On or about January 10, 2007, Davis's father, Chester Davis, arrived at the Springfield Residence with movers, who wrapped furniture and brought all of Davis's belongings (the "subject property") to the front lawn. (Brown Answer ¶ 3; Brown Depo., at 35-39, 57-58). Brown arrived at the Springfield Residence later that day and observed the loading of the

---

[2] Brown has submitted an "Answer to Amended Complaint [and] Counterclaim against PODS." [Docket Entry No. 35]. The first half of Brown's submission, which responds to Davis's claims asserted against her in the Amended Complaint, is hereinafter referred to as the "Brown Answer." The second half of Brown's submission, in which Brown seeks to assert cross claims against PODS improperly labeled as "Counterclaim against PODS," is hereinafter referred to as the "Cross Complaint."

[3] PODS has submitted a blank "copy of our complete Rental Agreement form at the time," that includes a signature block on each of the four (4) pages; but PODS only submitted one (1) page, dated January 9, 2007 (Ogburn Decl., Ex. A), which contains a signature that Brown testified "appears to be my signature." (Brown Depo., at 15). PODS contends that "Brown received a full and complete copy of the Rental Agreement prior to signing the Rental Agreement." (Ogburn Decl., ¶ 9). Brown has conceded that she signed the first page of PODS' four (4) page rental agreement, but disputes that she received or signed the remaining three (3) pages. Therefore, the Court will consider only page one (1), and the provisions contained therein, to be the complete Rental Agreement between Brown and PODS.

[4] Section 4 of the Rental Agreement, which is located on page one (1), states, in part, that "Tenant shall store only personal property that Tenant owns and will not store property that is claimed by another or in which another has any right, title or interest." (Rental Agreement, ¶ 4). The Rental Agreement further provides that "Tenant acknowledges and agrees that the following items should be excluded from storage: . . . property not owned by the tenant or for which tenant is not legally liable." (*Id.*)

[5] Section 4 states: "Tenant agrees that if the aggregate value of all personal property stored in the Container exceeds or is deemed to exceed $5,000, it is Tenant's responsibility to adequately insure the stored property as set forth in Section 5." (Rental Agreement, ¶ 4).

[6] Brown testified that she did not recall purchasing insurance for the property stored in the Container. (Brown Depo., at 84).

3

Container; upon completion of the loading, the Container was locked. (Brown Depo., at 35, 39, 53-59; Brown Answer ¶ 4; Chester Davis Depo., at 39-41).[7] PODS picked up the Container and brought it to 50 Oser Avenue, Hauppauge, New York 11788 for storage. (PODS' 56.1 Stmt ¶ 6; Am. Compl. ¶ 8). Brown did not compile an inventory of the items placed in the PODS Container nor did she photograph the subject property. (Brown Depo., at 36-37). Davis testified that he "didn't do anything" in connection with his property after Brown notified him in early 2007 that she had stored the subject property in the Container because "[he] trusted her to take care of it." (Davis Depo., at 11).

As early as August 2008, Brown stopped making the required monthly payments for the Container on time and in full, and the account was in arrears through most of 2008. (PODS' 56.1 Stmt. ¶ 16; Brown Depo., at 61-72). PODS mailed invoices and past due notices to Brown at 145 Clermont Avenue, Hempstead, New York 11550, which reflected the outstanding balance on the account as well as the newly incurred monthly charges. (Ogburn Decl., Exs. E, F). While Brown initially testified that she stopped making payments because she did not receive the invoices, she later admitted that she received the invoices and past due notices for August 2008 through January 2009, but had no explanation for her failure to make the required payments. (Brown Depo., at 63-73, 79-80; PODS' 56.1 Stmt. ¶¶ 17-18). Specifically, Brown admits that she received an invoice and past due notice, both dated January 26, 2009, which indicated an outstanding account balance of four hundred fourteen dollars and fifty-six cents ($414.56). (Brown Depo., at 70, 79).

---

[7] While Brown testified that she "believe[d]" it was Chester Davis who locked the Container, Chester Davis testified that the Container was locked by Brown. (Davis Depo., at 55; Chester Davis Depo., at 39-40). In any event, both Brown and Chester Davis agree that the Container was locked. (Chester Davis Depo., at 40; Brown Depo., at 55-56). According to Brown, "I remember jiggling [the lock], because I'm a little neurotic, to make sure that it was locked." (Brown Depo., at 56).

According to Davis, Brown never notified him that the account was in arrears. (Davis Depo., at 21). Brown testified that she did not recall whether she sent the invoices and past due notices to Davis's family or alerted them that the account was in arrears. (Brown Depo., at 78). Chester Davis testified that he had never seen the invoices or past due notices prior to his deposition. (Chester Davis Depo., 48). Chester Davis further testified that he would have made the payments if Brown had contacted him about her inability to make the required payments, but Brown did not do so. (*Id.* at 55-56).

On January 26, 2009, PODS sent another letter to Brown at the same address, which notified Brown that if she failed to pay the full amount of the outstanding balance by February 8, 2009, the contents stored in the Container would be sold at an auction on February 24, 2009 ("Notice of Auction"). (Ogburn Decl., Ex. C). Although Brown admits that she received the invoice and past due notice dated January 26, 2009, Brown contends that she never received the Notice of Auction. (Brown Depo., at 75, 83). On February 24, 2009, PODS conducted a lien sale of the property stored in the Container (the "Lien Sale"). (PODS Memorandum in Support of Summary Judgment ("PODS' Memo") [Docket Entry No. 47-19], at 1; Notice of Auction).

On or about April 2010, Davis learned from his sister that PODS had sold his property stored in the Container. (Am. Compl. ¶ 12). While Davis alleges that it was Brown who informed his sister about the Lien Sale, (*id.*), Brown contends that "Davis's sister found out" and "she, actually, informed [Brown]." (Brown Depo., at 91). According to Davis, at the time his sister told him about the Lien Sale, Brown had not informed him that his property had been sold. (Am. Compl. ¶ 14). Brown testified that she did not tell Davis about the Lien Sale because she thought Davis's sister had told him. (Brown Depo., at 99). While Brown does not recall

whether she attempted to inform Chester Davis that the account was in arrears, Brown admits that she did not tell Chester Davis about the Lien Sale. (*Id.* at 109).

B.     Procedural History

On April 17, 2012, Davis commenced this action against defendants Brown and PODS, seeking to recover damages from the Lien Sale. [Docket Entry No. 1]. On June 22, 2012, Davis filed an amended complaint ("Amended Complaint"), asserting the following claims against PODS: (i) negligence; (ii) intentional negligence; (iii) breach of contract; and (iv) conversion. [Docket Entry No. 6]. The Amended Complaint also asserts the following claims against Brown: (i) negligence; (ii) intentional negligence; and (iii) violation of bailment. On August 27, 2012, PODS filed an answer to the Amended Complaint. [Docket Entry No. 9]. On May 31, 2013, Brown filed the Brown Answer and the Cross Complaint, in which she challenges the validity of the Lien Sale.[8] [Docket Entry No. 35]. On June 18, 2013, PODS filed an answer to Brown's Cross Complaint. [Docket Entry No. 36].

On June 26, 2013, at a status conference held before the Court at which Davis, Brown, and counsel for PODS were present, the Court ordered that PODS serve its anticipated summary judgment motion upon Brown and Davis by July 26, 2013, Brown and Davis serve any opposition upon PODS by August 26, 2013, and PODS serve its reply upon Brown and Davis and file the fully briefed summary judgment motion by September 13, 2013. [Docket Entry No. 37]. On July 26, 2013, PODS served its summary judgment motion upon Davis and Brown. [Docket Entry No. 38]. On September 4, 2013, the Court granted Davis's request for an

---

[8]     In the Cross Complaint, Brown alleges that: (i) "PODS Inc., never mailed any notification of a pending liquidation sale to Defendant Brown"; (ii) "PODS Inc., sold the property with full knowledge that they had not provided adequate notice to Defendant Brown"; and (iii) "[a]t no time was PODS Inc., authorized to liquidate the property in the unit." (Cross Complaint, at 2). Brown seeks one hundred sixty thousand dollars ($160,000.00) in compensatory damages and five hundred thousand dollars ($500,000.00) in "special damages." (*Id.* at 2).

6

extension of time to oppose PODS' summary judgment motion, extending Davis's time to oppose until September 26, 2013. [Docket Entry No. 42].

On October 3, 2013, PODS filed its summary judgment motion along with a cover letter informing the Court that PODS had not received any opposition papers from Davis. [Docket Entry Nos. 43, 47]. On October 15, 2013, after the time to oppose had expired and PODS filed its summary judgment motion as unopposed, Davis filed a second motion for extension of time to oppose PODS' summary judgment motion. [Docket Entry No. 48]. On October 25, 2013, the Court granted Davis's request, ordering that Davis serve his opposition on or before December 1, 2013. [Docket Entry No. 49]. On December 2, 2013, Davis filed his opposition to PODS' summary judgment motion. [Docket Entry No. 52]. On December 3, 2013, this Court ordered that PODS' reply in support of its summary judgment motion be filed by December 20, 2013. [Docket Entry No. 51]. On December 19, 2013, PODS filed its reply. [Docket Entry No. 53].

On January 23, 2014, Davis filed a motion for extension of time to respond to PODS' reply. [Docket Entry No. 54]. On January 27, 2014, this Court held a telephone conference, during which Davis requested permission to file further papers in opposition to PODS' summary judgment motion, and Brown stated that she was considering hiring a lawyer to oppose PODS' summary judgment motion. [Docket Entry No. 55]. The Court denied these requests and deemed PODS' summary judgment motion fully submitted.

On April 30, 2014, Brown filed a motion for leave to amend the Cross Complaint ("Brown's Motion to Amend"), together with a proposed amended cross complaint ("Brown's Proposed Amended Cross Complaint") [Docket Entry No. 63], and a cross-motion for summary judgment on the proposed amended cross complaint ("Brown's Cross-Motion for Summary

Judgment").[9] On May 5, 2014, PODS filed a letter motion seeking to strike Brown's motions as untimely ("PODS' May 5 Letter Motion"). [Docket Entry No. 60].

On May 5, 2014, Davis filed a motion for leave to file a second amended complaint ("Davis's Motion to Amend"), together with a proposed second amended complaint ("Davis's Proposed Second Amended Complaint") [Docket Entry No. 68], and a cross-motion for summary judgment on the proposed second amended complaint ("Davis's Cross-Motion for Summary Judgment").[10] On May 14, 2014, PODS filed a letter motion seeking to strike Davis's motions as untimely ("PODS' May 14 Letter Motion," and together with PODS' May 5 Letter Motion, "PODS' Motions to Strike"). [Docket Entry No. 75].

II.  PODS' Summary Judgment Motion

  A.  Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether

---

[9] Brown's Cross-Motion for Summary Judgment includes the following documents: (i) "motion for leave to late file cross-motion for summary judgment" [Docket Entry No. 62]; (ii) "motion for summary judgment" [Docket Entry No. 64]; (iii) "notice of motion" [Docket Entry No. 65]; (iv) "affidavit of Joy Brown" [Docket Entry No. 66]; and (v) "memorandum of law in support of cross-motion for summary judgment" [Docket Entry No. 67].

[10] Davis's Cross-Motion for Summary Judgment includes the following documents: (i) "motion for leave to late file statement of disputed/undisputed material facts under L.R. 56.1" [Docket Entry No. 69]; (ii) "motion for leave to late file plaintiff's cross-motion for summary judgment" [Docket Entry No. 70]; (iii) "notice of motion" [Docket Entry No. 71]; (iv) "cross motion for summary judgment" [Docket Entry No. 71-1], (v) "56.1 statement [Docket Entry No. 71-2], and (vi) "affidavit by Corey Davis" [Docket Entry No. 72].

8

there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (internal quotation marks and citation omitted); *see also Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citation omitted). If this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358 (citation omitted). In order to defeat summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citations omitted); *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks and citation omitted)).

B.   Discussion

PODS has moved for summary judgment on Davis's claims in the Amended Complaint, and Brown's claims in the Cross Complaint.

1. Davis's Claims Against PODS

In the Amended Complaint, Davis asserts the following claims against PODS: (i) breach of contract, (ii) negligence, (iii) intentional negligence, and (iv) conversion. Davis is not a party to the Rental Agreement between PODS and Brown, nor is he a third-party beneficiary. "A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[] an intent to permit enforcement by the third party' in question." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009); *see also Hoy v. Inc. Vill. of Bayville*, 765 F. Supp. 2d 158, 172 (E.D.N.Y. 2011) ("As a general rule, absent status as an intended third-party beneficiary, one may sue on a contract only if one is a party to the contract." (internal quotation marks and citation omitted)). "Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005); *see also Hoy*, 765 F. Supp. 2d at 172 ("The party claiming to be a third-party beneficiary has the burden of demonstrating that the contract terms grant it an enforceable right." (citation omitted)). "Under New York law, dismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant." *Subaru*, at 124 (citation omitted).

The Rental Agreement explicitly provides that "property not owned by [Brown]" "should be excluded from storage" in the Container, and that "[Brown] shall store only personal property that [Brown] owns and will not store property that is claimed by another or in which another has

10

any right, title or interest." (Rental Agreement, ¶ 4). It is clear from this language that PODS did not intend Davis, or any other individual, to be a third-party beneficiary to the Rental Agreement. *See Subaru*, 425 F.3d at 124. Accordingly, Davis lacks standing to assert a breach of contract claim against PODS. *See Hoy*, 765 F. Supp. 2d at 173-74.

Davis's conversion claim also fails because it "cannot be predicated on a mere breach of contract, and no independent facts are alleged giving rise to tort liability." *Kopel v. Bandwidth Tech. Corp.*, 56 A.D.3d 320, 320, 868 N.Y.S.2d 16 (N.Y. App. Div. 1st Dep't 2008) (citation omitted). The remaining claims asserted by Davis against PODS in the Amended Complaint for negligence and intentional negligence also stem from the Rental Agreement between PODS and Brown, and thus, Davis lacks standing to assert those claims. *See TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, No. 00 Civ. 5189, 2006 WL 2463537, at *3 (S.D.N.Y. Aug. 23, 2006) ("Because Plaintiff's negligence claim is based on the [contract between two other parties], [plaintiff] lacks standing to assert the negligence claim for the same reasons that [plaintiff] lacks standing to assert the breach-of-contract claims."). Accordingly, PODS' motion for summary judgment is granted with respect to Davis's claims in the Amended Complaint.

2. Brown's Claims Against PODS

In the Cross Complaint, Brown challenges the validity of the Lien Sale, arguing that PODS failed to provide her with adequate notice and that PODS lacked authority to sell the property in the Container. (Cross Compl., at 2). PODS argues that Brown's Cross Complaint fails to meet the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, the Court is required to read a plaintiff's *pro se* complaint liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081

(2007) (citation omitted), and to construe it "'to raise the strongest arguments'" suggested. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010)). When reviewed with this deferential standard, Brown's Cross Complaint is construed to assert claims for: (i) breach of contract, and (ii) violation of New York Lien Law § 182.[11]

It is not disputed that Brown breached the Rental Agreement by failing to make the required monthly payments and permitting the account to fall into arrears. Brown admitted that she received invoices and past due notices from PODS for August 2008 through January 2009, but had no explanation for her failure to make the required payments. (Brown Depo., at 63-73, 79-80). Pursuant to New York Lien Law § 182(6), PODS had a lien on the property stored in the Container due to Brown's failure to pay the monthly rental charges.[12]

### a. Notice of Auction

New York Lien Law § 182(7) provides that an owner of a self-service "storage facility may enforce its statutory lien upon stored property [by public or private sale] after notice to the lessee." *Anderson v. PODS, Inc.*, 70 A.D.3d 820, 822-23, 896 N.Y.S.2d 88 (N.Y. App. Div. 2d Dep't 2010). Section 182(7) sets forth the content that must be included in the notice:

> The notice shall include an itemized statement of the amount due, the description of the property subject to the lien, the nature of the proposed sale, a demand for payment within a specified time not

---

[11] The Rental Agreement between PODS and Brown is governed by New York Lien Law § 182, as it sets forth the terms for Brown to occupy storage space owned by PODS "for the purpose of storing and removing personal property." N.Y. Lien Law § 182(1)(a).

[12] Section 182(6) provides that: "The owner of a self-storage facility has a lien upon all personal property stored at a self-service storage facility for occupancy fees or other charges, present or future, in relation to the personal property and for expenses necessary for its preservation or expenses reasonably incurred in its sale or other disposition pursuant to law and any other charges pursuant to the occupancy agreement. The lien provided for in this section is superior to any other lien or security interest. The lien attaches as of the date the personal property is brought to the self-service storage facility." N.Y. Lien Law § 182(6).

> less than ten days from receipt of notification and a conspicuous
> statement that unless the claimant pays within that time the goods
> will be advertised for sale and sold at public or private sale and it
> shall state that any person claiming an interest in the goods is
> entitled to bring a proceeding hereunder within ten days of the
> service of the notice if he disputes the validity of the lien, or the
> amount claimed.

N.Y. Lien Law § 182(7). Section 182(7) also requires that "[t]he notice shall be personally delivered to the occupant, or sent by registered or certified mail, return receipt requested, to the occupant to the last address provided by the occupant, pursuant to the occupancy agreement." *Id.*

Brown denies receiving the Notice of Auction purportedly sent to her by PODS "via certified mail <u>and</u> non-certified mail." (Ogburn Decl. ¶ 13(a) (emphasis in original)). While PODS claims that "[n]either the certified letter nor the letter sent by regular mail was returned to PODS," that fact does not demonstrate compliance with New York Lien Law § 182(7). (*Id.*). Return receipt requested "allows the sender to obtain a copy of the signature of the addressee or addressee's agent, date delivered and the address of delivery." *Lewitin v. Manhattan Mini Storage*, 30 Misc.3d 1212(A), 924 N.Y.S.2d 310 (Table), 2010 WL 5591871, at *2 (N.Y. Sup. Ct. N.Y. Cnty. Nov. 22, 2010). PODS has not submitted proof that the Notice of Auction was sent "return receipt requested," as required by New York Lien Law § 182(7). *See Lewitin*, 2010 WL 5591871, at *2 (storage facility owner failed to comply with notice requirements of § 182(7) where even though "the notice of sale was sent via certified mail, it was not sent return receipt requested").

Nor has PODS submitted proof that it complied with the statutory requirement that the notice "include an itemized statement of the amount due." N.Y. Lien Law § 182(7). While the Notice of Auction submitted by PODS references "the itemized transaction summary sheet

enclosed," no such enclosure has been provided to the Court. (Ogburn Decl., Ex. C). Therefore, PODS has failed to establish that it provided proper notice of the Lien Sale to Brown. *See Anderson v. PODS, Inc.*, 70 A.D.3d 820, 822-23, 896 N.Y.S.2d 88 (N.Y. App. Div. 2d Dep't 2010) (holding PODS liable for any damages resulting from lien sale, following tenant's failure to pay monthly storage fee payments, where "notices allegedly sent by PODS to the petitioner complied with none of the [New York Lien Law § 182] statutory criteria regarding their content, and there is no proof that the notices were sent in the manner prescribed by the statute"). Accordingly, PODS is not entitled to summary judgment with respect to Brown's claims challenging the validity of the Lien Sale asserted in the Cross Complaint, including Brown's claims for breach of contract and violation of New York Lien Law § 182, as construed by the Court.[13]

b. Limitation of Liability

Alternatively, PODS requests that the Court grant partial summary judgment directing that PODS' liability be capped at five thousand dollars ($5,000.00). Section Four (4) of the Rental Agreement, located on page one (1), states: "Tenant agrees that if the aggregate value of all personal property stored in the Container exceeds or is deemed to exceed $5,000, it is Tenant's responsibility to adequately insure the stored property as set forth in Section 5." (Ogburn Decl., Ex. A). There is no dispute that Brown signed the first page of the Rental Agreement, thereby agreeing that Brown, and not PODS, would be responsible for any damages

---

[13] PODS also argues that Brown materially breached her obligations under the Rental Agreement by storing property that belonged to Davis with an alleged value in excess of five thousand dollars ($5,000.00), and that Brown, therefore, "relinquished any entitlement to seek damages from PODS for a later breach of contract." (PODS' Memo, at 10). This argument entirely ignores the statutory obligations imposed upon owners of self-service storage facilities by New York Lien Law § 182. *See Goldberg v Manhattan Mini Storage Corp.*, 225 A.D.2d 408, 408, 640 N.Y.S.2d 493 (N.Y. App. Div. 1st Dep't 1996) (contractual relationship between self-service storage facility owner and lessor is governed by Lien Law § 182). Brown's purported breaches of the Rental Agreement do not insulate PODS from suit for conducting an improper Lien Sale without proper notice in violation of New York Lien Law § 182(7).

14

or losses to the stored property in excess of five thousand dollars ($5,000.00).[14] (Ogburn Decl., Ex. A; Brown Depo., at 13-15). Accordingly, PODS' motion for partial summary judgment seeking that its liability, if any, be limited to five thousand dollars ($5,000.00) is granted. *See e.g.*, *WestCom Corp. v. Greater N.Y. Mut. Ins. Co.*, 41 A.D.3d 224, 229 (N.Y. App. Div. 1st Dep't 2007) (limiting defendant's liability for damages to $7,500, the maximum value of property to be stored in the unit pursuant to the parties' signed storage agreement); Kunkin Decl., Ex. H. (*Lewitin v. Manhattan Mini Storage*, Sup. Ct., N.Y. Cnty., June 8, 2012, (Madden, J.), Index No. 112593/09) (finding defendant entitled to partial summary judgment limiting plaintiff-occupant's damages to $7,500, the maximum aggregate value of property to be stored pursuant to the storage facility agreement).

III. Motions to Amend

A. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that a party shall be given leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 229, 9 L.Ed.2d 222 (1962). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008). A district court "plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is

---

[14] Any potential breach by PODS does not affect the limitation of PODS' liability set forth in the Rental Agreement. *See, e.g., Goldberg v. Manhattan Mini Storage Corp.*, 225 A.D.2d 408, 640 N.Y.S.2d 493 (1st Dep't 1996) (finding "no merit to defendant's argument that the limitation of liability contained in the parties' occupancy agreement...should not be enforced because of defendant's various breaches of the agreement"). Furthermore, Brown not only breached the Rental Agreement by failing to make the required monthly payments and permitting the account to fall into arrears, but also by storing "property not owned by [Brown]" valued in excess of five thousand dollars ($5,000.00). (Rental Agreement, ¶ 4).

15

offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990).

B. Discussion

On January 27, 2014, this Court deemed PODS' summary judgment motion fully submitted, more than six (6) months after PODS initially served its moving papers upon Davis and Brown.[15] More than three (3) months after PODS' summary judgment was marked fully submitted, and nearly one (1) year following the close of discovery on June 28, 2013 [Docket Entry No. 25], Davis's Motion to Amend and Brown's Motion to Amend were filed.[16] Davis and Brown have failed to provide a satisfactory explanation for this inordinate delay. Furthermore, PODS would be unduly prejudiced if this Court were to grant Davis's Motion to Amend and Brown's Motion to Amend, thereby accepting the Proposed Second Amended Complaint and the Proposed Amended Cross Complaint, which both seek to assert new causes of action against PODS.[17] *See Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (undue prejudice may exist where a proposed amendment would "require the opponent to expend significant additional resources" or "significantly delay the resolution of the dispute"). Therefore, Davis's Motion to Amend and Brown's Motion to Amend are denied. *See Cresswell*,

---

[15] Davis was granted numerous extensions by this Court to oppose PODS' summary judgment motion, including an extension after PODS had filed its summary judgment motion as unopposed. During that six (6) month period, Brown neither served or filed an opposition nor requested an extension of time to respond. Instead, during the telephone conference with the Court on January 27, 2014, Brown stated that she was considering hiring a lawyer to oppose PODS' summary judgment motion. The Court determined that the time to oppose had long passed and deemed PODS' summary judgment as fully submitted.

[16] The Court deems PODS' Motions to Strike as oppositions to Brown's Motion to Amend and Davis's Motion to Amend.

[17] Davis's Proposed Second Amended Complaint seeks to assert the following new claims against PODS: (i) violation of New York Lien Law §§ 182, 201; (ii) gross negligence; and (iii) unjust enrichment. (Proposed Second Am. Compl. ¶¶ 30-35). Brown's Proposed Amended Cross Complaint seeks to assert the following new claims against PODS: (i) gross negligence; (ii) negligence; (iii) unjust enrichment; and (iv) conversion. (Proposed Am. Cross Compl. ¶¶ 19-24).

922 F.2d at 72 (affirming denial of motion to amend where defendant "would be prejudiced by plaintiffs' inordinate delay in making [the motion to amend]"). Accordingly, Brown's Cross-Motion for Summary Judgment on the Proposed Amended Cross Complaint and Davis's Cross-Motion for Summary Judgment on the Proposed Second Amended Complaint are denied as moot.

III. Conclusion

For the foregoing reasons, PODS' motion for summary judgment is granted insofar as Davis's claims in the Amended Complaint are dismissed with prejudice, and PODS' liability, if any, is limited to five thousand dollars ($5,000.00). PODS' summary judgment motion is denied insofar as it seeks dismissal of Brown's claims in the Cross Complaint. Brown's claims against PODS in the Cross Complaint, which the Court has construed as claims for breach of contract and violation of New York Lien Law § 182, remain pending.

Additionally, Brown's Motion to Amend and Davis's Motion to Amend are denied. Brown's Cross-Motion for Summary Judgment on the Proposed Amended Cross Complaint and Davis's Cross-Motion for Summary Judgment on Davis's Second Amended Complaint are denied as moot.

The parties are directed to appear before me for a pretrial conference on December 18, 2014 at 11:15 a.m., in Courtroom 1010, located at 100 Federal Plaza, Central Islip, New York 11722. Brown and PODS are directed to appear in person. PODS' counsel is directed to make arrangements for Davis to appear via telephone. The parties are advised that failure to appear at

that conference may result in the dismissal of this action with prejudice pursuant to Rules 16(f) and 41(b) of the Federal Rules of Civil Procedure.

**SO ORDERED.**

s/ Sandra J. Feuerstein

_____
Sandra J. Feuerstein
United States District Judge

Dated: September 15, 2014
      Central Islip, New York